IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | No. 3:18-cr-00415-K-1 |
| | § | |
| JOSE BRAVO-ZIRANDA, | § | |
| #57473-177, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Jose Bravo-Ziranda's motion and supplemental motion for compassionate release (docs. 146, 157). Bravo-Ziranda moves for the Court to reduce his sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i), and he seeks compassionate release to transfer into the custody of the U.S. Immigration and Customs Enforcement ("ICE") for deportation to Mexico. The Government filed a response (doc. 160), and Bravo-Ziranda filed a reply (doc. 163). For the reasons addressed below, the Court **GRANTS** Bravo-Ziranda's motions and **ORDERS** that he be released to ICE custody based on a detainer. *See* (Doc. 157-1 at 7).

### I. BACKGROUND

Bravo-Ziranda pleaded guilty to conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 (21 U.S.C. § 841(a)(1) and (b)(1)(C)). On February 19, 2020, the Court sentenced him to 120 months'

imprisonment. Bravo-Ziranda did not appeal to the Fifth Circuit Court of Appeals, and he has not filed a post-conviction motion under 28 U.S.C. § 2255.

On August 3, 2022, Bravo-Ziranda filed a *pro se* motion for compassionate release under § 3582(c)(1)(A)(i). (Doc. 146.) Then, on August 15, 2022, the Court appointed the Federal Public Defender's Office to assist Bravo-Ziranda with pursuing his motion for compassionate release. (Doc. 147.) On April 28, 2023, Bravo-Ziranda, through counsel, filed a supplemental motion for compassionate release. (Doc. 157.) Bravo-Ziranda contends that the Court should reduce his sentence to time served, and in support, he argues: (1) he may petition the Court for compassionate release; (2) he has exhausted his administrative remedies; (3) his cancer and other health conditions constitute extraordinary and compelling circumstances warranting relief under § 3582(c)(1)(A)(i); and (4) reducing his sentence aligns with the sentencing goals of 18 U.S.C. § 3553(a). The Government responds that Bravo-Ziranda's motions for compassionate release should be denied. (Doc. 160.)

## II. LEGAL AUTHORITY

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c). But under § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), "[a] court, on a motion by the [Bureau of Prisons (BOP)] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'"

*United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)); *see also Chambliss*, 948 F.3d at 693 n.1.

Congress did not specifically define "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i), and it left "that task to the Sentencing Commission, though Congress did insist that '[r]ehabilitation of the [prisoner] alone' cannot justify a reduced sentence." *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022) (citing 28 U.S.C. § 994(t); *United States v. Shkambi*, 993 F.3d 388, 390-91 (5th Cir. 2021)). The Fifth Circuit Court of Appeals recently clarified "that a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence," holding that, "[b]ecause [the federal prisoner's] claims would have been cognizable under [28 U.S.C.] § 2255, they are not cognizable under § 3582(c)." *United States v. Escajeda*, 58 F.4th 184, 187-88 (5th Cir. 2023).

A sentence reduction under § 3582(c) also "must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *Jackson*, 27 F.4th at 1089 (quoting § 3582(c)(1)(A)). In the commentary to U.S.S.G. § 1B1.13, the Sentencing Commission "'articulate[s] four categories of 'extraordinary and compelling reasons' that could warrant a sentence reduction: (A) medical conditions of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons identified by the [BOP's] Director." *Id.* at 1090 (quoting *Shkambi*, 993 F.3d at 391).

"[T]he Commission apparently did not anticipate that Congress would allow prisoners to file compassionate-release motions," as § 1B1.13 "repeatedly states that it

3

governs *the Bureau's* compassionate release motions." *Id.* (citing *Shkambi*, 993 F.3d at 392). Consequently, "§ 1B1.13 is not an 'applicable policy statement' to compassionate release motions filed by prisoners, [so] 'neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582.'" *United States v. Cooper*, 996 F.3d 283, 288 (5th Cir. 2021) (quoting *Shkambi*, 993 F.3d at 392-93); *see also United States v. Rodriguez*, 27 F.4th 1097, 1099-1100 (5th Cir. 2022) ("There is little developed guidance on what constitutes extraordinary and compelling reasons for a sentence reduction because neither § 3582 nor the Guidelines fully define or limit those reasons.") (citing *Shkambi*, 993 F.3d at 391-92).

"Even so, Section 1B1.13 may 'inform [ ]' the district court's analysis." *Jackson*, 27 F.4th at 1090 (quoting *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021)); *see also United States v. Rucker*, No. 21-40204, 2021 WL 5627064, at *1 (5th Cir. Nov. 30, 2021) (per curiam) ("Reliance on § 1B1.13 merely as guidance [is] not error.") (citing *Thompson*, 984 F.3d at 433).

When a defendant proffers a reason for a sentence reduction that the district court, which is no longer bound by § 1B1.3 finds to be an extraordinary and compelling reason, that alone is not a basis to reduce a sentence. Rather, the defendant still must convince the district court "to exercise discretion to grant the motion [for compassionate release] after considering the [Section] 3553(a) factors." *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021) (quoting *Shkambi*, 993 F.3d at 392); *see also Thompson*, 984 F.3d at 433 & 433. n.2.

4

### III.  DISCUSSION

Before a defendant may bring his own motion, the FSA, "in clear language, specifies" that "a defendant must submit a request to 'the [BOP] to bring a motion on the defendant's behalf.'" *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020) (quoting § 3582(c)(1)(A)). This "prefiling administrative exhaustion requirement is not jurisdictional, but it is a mandatory claim-processing rule." *United States v. Harmon*, 834 F. App'x 101, 101-02 (5th Cir. 2021) (per curiam) (citing *Franco*, 973 F.3d at 467-68). So, if "the Government properly raise[s] the rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'" *Id.* at 102 (quoting *Franco*, 973 F.3d at 468) (emphasis in original). In this case, the warden at FMC Devens denied Bravo-Miranda's motion for compassionate release on August 9, 2022.  App. 10 (Doc. 157-1). Consequently, Bravo-Ziranda has exhausted his administrative remedies.

### a. There are "extraordinary and compelling reasons" for a sentence reduction.

Initially, Bravo-Ziranda argues that he did not have any health issues for the Court to weigh at his sentencing on February 19, 2020, but he has now been diagnosed with papillary thyroid cancer.  (Doc. 157 at 8); *see also* (PSR ¶ 54) (he reported "no serious or chronic illness"); (Doc. 120) (recognizing the PSR was adopted "without change").  Bravo-Ziranda further argues that the BOP has designated him as a Care Level 4 inmate, which is a meaningful designation because it is the "BOP's highest classification for medical care." *Id.* at 8.  As discussed below, the Court finds that

5

Bravo-Ziranda's medical conditions demonstrate "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i).

Bravo-Ziranda is currently forty-four years old, and he is incarcerated within the BOP at Devens Federal Medical Center ("FMC") in Ayer, Massachusetts. *See* App. 7 (Doc. 157-1) (his date birth is September 29, 1978); *see also* https://www.bop.gov/inmateloc/ (last visited June 26, 2023) (BOP inmate locator).  In November 2021, Bravo-Ziranda was experiencing concerning health signs, such as abnormal thyroid levels, a loss of ten to fifteen pounds within the past few years, and a noticeable tremor in his arms and legs that had been present for several years. App. 11, 13 (Doc. 157-1). Bravo-Ziranda underwent a fine needle aspiration biopsy on January 12, 2022, and he was diagnosed with "[p]apillary thyroid carcinoma," or papillary thyroid cancer. *Id.* at 34.

Papillary thyroid cancer is the most common type of thyroid cancer. https://www.mdanderson.org/cancerwise/what-is-papillary-thyroid-cancer--8-questions--answered.h00-159543690.html (last visited June 26, 2023).  Papillary thyroid cancer is said to have metastasized when it has spread from its original location point. *Id.* On February 4, 2022, a surgical oncologist met with Bravo-Ziranda and recommended holding off on surgery until his hyperthyroidism had become more stable. App. 47 (Doc. 157-1).  Then, on April 20, 2022, Bravo-Ziranda underwent a total thyroidectomy. *Id.* at 63-64.  The pathology report from the surgery showed that Bravo-Ziranda's thyroid cancer had metastasized to one of two lymph nodes. *Id.* at

71, 84, 87,89. A possible complication with papillary thyroid cancer is metastasizing of the cancer to the lymph nodes, but it is rare for papillary thyroid cancer to spread. https://www.mountsinai.org/health-library/diseases-conditions/thyroid-cancer-papillary-carcinoma (last visited June 26, 2023). The prognosis for those diagnosed with papillary thyroid cancer is better when they are less than 40 years old. *Id.* On May 23, 2022, a BOP physician recognized the significance of the fact that Bravo-Ziranda's cancer had metastasized, and the physician determined that Bravo-Ziranda "need[ed] an <u>urgent</u> consult to oncology." App. 81 (Doc. 157-1) (emphasis added). Then, on May 26, 2022, a BOP physician requested an outside endocrinology consultation. *Id.* at 83. Approximately a week later, the endocrinologist noted that while "[r]adioactive iodine ablation is not routinely recommended," it can be appropriate with a "high-risk patient." *Id.* at 103. Bravo-Ziranda's doctor then decided to "check baseline thyroglobulin and thyroglobulin antibodies to assess for any residual tissue." *Id.* The doctor also planned to consider "remnant ablation" for any "residual tissue" and conduct another ultrasound in six months, or earlier if needed. *Id.* On July 28, 2022, Bravo-Ziranda's doctor recommended that he have radiation. *Id.* at 112. In August 2022, Bravo-Ziranda underwent a radioactive iodine treatment for his papillary thyroid cancer. App. 28 (Doc. 160-1.) On November 9, 2022, Bravo-Ziranda had a thyroid ultrasound, and the doctor who read the thyroid ultrasound found a "slightly prominent left neck lymph node lacking demonstrable normal architecture." App. 158 (Doc. 157-1). The doctor recommended "[t]issue

7

sampling or [a] short interval follow-up." *Id.* Bravo-Ziranda's counsel now represents that the BOP did not provide any medical records showing the recommended follow up treatment ever occurred. (Doc. 157 at 11.)

Bravo-Ziranda's medical conditions are well documented in the medical records before the Court. *See* (Doc. 157-1; Doc. 160-1.) Most significantly, the medical records demonstrate that Bravo-Ziranda suffers with papillary thyroid cancer that has metastasized to a lymph node. App. 27, 36, 38-40, 43, 46, 63, 71, 76, 81-82, 84, 86-87, 89, 96-97, 99, 105, 108, 112, 115, 118, 127-28, 130, 133, 137, 141, 147-48, 150, 153, 155, 159, 161, 163 (Doc. 157-1). The medical records also demonstrate that Bravo-Ziranda suffers with additional health issues, specifically hypertension, elevated glucose levels (i.e., prediabetes or borderline diabetes mellitus), hypothyroidism, hyperthyroidism, tremors, weight loss, hyperlipidemia, and Graves' disease. *Id.* at 11, 16-17, 19, 27, 34, 38, 40, 43, 46, 63, 76, 81-84, 86-87, 89, 105, 115, 118, 127-28, 137, 147-48, 159, 161, 163. Bravo-Ziranda's counsel does not argue that Bravo-Ziranda suffers from a terminal illness, and it does not appear from the Court's review of his medical records that is the case. Under the commentary to the United States Sentencing Guidelines (U.S.S.G.), a "terminal illness" is "a serious and advanced illness with an end of life trajectory." U.S.S.G § 1B1.13 cmt. n.1(A)(i); *see also Chambliss*, 948 F.3d at 692 (the defendant was diagnosed with advanced-stage liver cancer and given two to three months to live). Advanced or terminal cancers are often found to be "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i).

*See United States v. Ramirez*, No. 98CR438(PGG)(SDA), 2021 WL 4150891, at *6 (S.D.N.Y. Sept. 13, 2021) ("[T]his Court finds that Ramirez's advanced pancreatic and liver cancer constitute 'extraordinary and compelling reasons' for purposes of the compassionate release statute.") (citing *United States v. Kelley*, 464 F. Supp. 3d 1134, 1135 (N.D. Cal. 2020) (finding extraordinary and compelling reasons where the defendant suffered from terminal prostate cancer and had only a two-year life expectancy)).

Bravo-Ziranda's health conditions are not terminal, but the Court still finds that they are still sufficiently serious to warrant release under § 3582(c)(1)(A)(i) because they substantially diminish his ability to provide self-care in the institutional setting. *See Thompson*, 984 F.3d at 433 (recognizing a "[m]edical [c]ondition" might be sufficiently serious to warrant release under § 3582(c)(1)(A) where the defendant has a terminal illness or a condition "that substantially diminishes the ability of the defendant to provide self-care") (quoting U.S.S.G. § 1B1.13 cmt n.1(A)); *see also United States v. Helmstetter*, No. CR 92-469, 2023 WL 2810707, at *3 (E.D. La. Apr. 6, 2023) (To be sufficiently serious to warrant release under § 3582(c)(1)(A), a medical condition must: (1) be a terminal illness, or (2) *a condition that substantially diminishes the defendant's ability to provide self-care within the correctional facility environment and from which he is not expected to recover*.) (emphasis added) (citing U.S.S.G. § 1B1.13 cmt. n.1(A)).

The BOP appears to have implicitly recognized that Bravo-Ziranda's medical conditions substantially diminish his ability to provide self-care in the institutional setting because it classified him at Care Level 4. In May 2019, the BOP issued its latest "Care Level Classification[s]." https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last accessed June 27, 2023). Under the BOP's Care Level Classification system, each federal inmate is assigned to a medical care level classification between one and four. *Id.* at 1. Bravo-Ziranda has been assigned to Care Level 4, (App. 4 (Doc. 157-1)), and according to the BOP's guidance, "Care Level 4 inmates require services available only at a BOP Medical Referral Center (MRC), which provides significantly enhanced medical services and limited inpatient care." BOP's Care Level Classification at 5 https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last accessed June 27, 2023). Under Care Level 4, "[f]unctioning may be so severely impaired as to require 24-hour skilled nursing care or nursing assistance." *Id.* Examples of conditions that fall within Care Level 4 include: "[c]ancer on active treatment, dialysis, quadriplegia, strike or head injury patients, major surgical treatment, and high-risk pregnancy." *Id.*

Last, Bravo-Ziranda argues that following his ultrasound appointment on November 9, 2022, the interpreting physician found a "slightly prominent left neck lymph node lacking demonstrable normal architecture" and ultimately recommended "[t]issue sampling or [a] short interval follow-up." App. 158 (Doc. 157-1). As

10

discussed, Bravo-Ziranda has shown that his medical conditions are "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i). Therefore, the Court need not address this additional argument.

For these reasons, Bravo-Ziranda has shown "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i). *See United States v. Samuels*, No. 14-42, 2020 WL 7265378, at *4 (W.D. La. Dec. 10, 2020) (finding a Care Level 3 defendant with Stage IV kidney disease showed extraordinary and compelling reasons for compassionate release).

### b. The § 3553(a) factors weigh in favoring of reducing Bravo-Ziranda's sentence.

When the court finds "extraordinary and compelling reasons" for compassionate release under § 3582(c)(1)(A)(i), those reasons must outweigh the § 3553(a) factors to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Rivas*, 833 F. App'x 556, 557 (5th Cir. 2020) (per curiam) ("[I]f a court finds 'an extraordinary and compelling reason for compassionate release,' then it must "provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision.") (quoting *Chambliss*, 948 F.3d at 693) (footnote omitted)). In the Fifth Circuit, a defendant seeking compassionate release under § 3582(c)(1)(A)(i) must: (1) show "extraordinary reasons"; (2) demonstrate their compassionate release is consistent with the applicable policy statements from the United States Sentencing Commission; and (3) convince the district court to exercise discretion to grant the motion after considering the § 3553(a) factors. *Shkambi*, 993 F.3d at 392.

11

In this case, Bravo-Ziranda has demonstrated "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i), and the Court must now determine if those reasons outweigh the § 3553(a) factors to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Sanchez-Chavez*, 2021 WL 5804279, at *3 (E.D. Tex. Dec. 7, 2021).

First, under § 3553(a)(1), the Court must address the nature and circumstances of the offense and the history and characteristics of the defendant. Bravo-Ziranda was arrested on July 20, 2018, after he agreed to supply an undercover officer with two kilograms of methamphetamine. (PSR ¶¶ 1, 14.) Bravo-Ziranda pleaded guilty to being involved in a methamphetamine conspiracy, and at sentencing, he was held responsible for 140,590 kilograms of converted drug weight. (Doc. 119; PSR ¶¶ 22, 23.) The serious nature of Bravo-Ziranda's offense weighs against his release on compassionate release. *See United States v. Martinez*, 832 F. App'x 906, 906 (5th Cir. 2021) (per curiam) (finding "[i]t was not unreasonable for [a] court to place greater weight on the seriousness of [the] offense, including the fact that a dangerous weapon was involved in the criminal activity" when it denied compassionate release); *see also United States v. Brown*, 829 F. App'x 695, 696 (5th Cir. 2020) (per curiam) (finding "[i]t was not unreasonable for the district court to afford greater weight to [the defendant's] history and characteristics, the amount of time served on his sentence, and the need to protect the public from further crimes by [the defendant] than the weight it placed upon his medical issues, the impact of the pandemic at [the prison]

and the BOP's response to the pandemic"). For these reasons, § 3553(a)(1) weighs against granting Bravo-Ziranda compassionate release.

Next, under § 3553(a)(2)(A), the Court must address the seriousness of the offense committed by the defendant, respect for the law, and providing a just punishment. Bravo-Ziranda's sentence was 120 months' imprisonment, and it reflects the serious nature of the drug offense he committed. At this time, however, Bravo-Ziranda has served over 60% of the calendar time, and he has only three calendar years left to serve. (Doc. 157 at 6; Doc. 160 at 2.) Bravo-Ziranda has served a significant portion of the sentence imposed by the Court, so § 3553(a)(2)(A) weighs in favor of granting him compassionate release.

Under § 3553(a)(2)(B), the Court must ensure that the sentence adequately deters other criminal conduct. In this case, Bravo-Ziranda has served a significant term of imprisonment, and he has less than three calendar years left to serve on his sentence of 120 months. (Doc. 157 at 6; Doc. 160 at 2.) Thus, the Court finds Bravo-Ziranda has served a sentence that is sufficiently long to deter others from engaging in a methamphetamine conspiracy. Section 3553(a)(2)(B) weighs in favor of granting Bravo-Ziranda compassionate release.

Finally, under § 3553(a)(2)(C), the Court must address the need to protect the public from further crimes by the defendant. Bravo-Ziranda is forty-four years old, a relatively young individual. *See* App. 7 (Doc. 157-1). Bravo-Ziranda has several health issues, including his most significant health condition, papillary thyroid cancer, which

has metastasized. As set forth in his Presentence Report, Bravo-Ziranda had a criminal history score of zero at sentencing, and there was no identifiable victim of his crime other than society at large. (PSR ¶¶ 24, 44.) The Court notes that Bravo-Ziranda was previously removed from the United States on two occasions, on November 25, 1997 and August 25, 2016, and he is not legally present in the United States. (PSR ¶ 45.) Bravo-Ziranda has maintained a perfect disciplinary record while incarcerated in the BOP, and the BOP has determined he poses a low risk of recidivism. App. 4, 6-7 (Doc. 157-1). Finally, the Court finds that Bravo-Ziranda does not pose a danger to the community because he is subject to an immigration detainer, and upon release from BOP custody, he will taken into ICE custody and removed to Mexico. *See United States v. Hussain,* No. 13-CR-661-PWG, 2021 WL 3367822, at *5 (D. Md. Aug. 3, 2021) (finding the defendant did not pose a danger to the community because immigration has a detainer on him, and he will be deported when released from custody); *United States v. Afanasyev*, No. 17 Cr. 350, 2020 WL 6395303, at *2 (S.D.N.Y. Oct. 30, 2020) (granting the defendant's motion for compassionate release where the defendant's immigration detainer indicated he would not be a danger to the community). Accordingly, § 3553(a)(2)(C) weighs in favor of granting his compassionate release motion.

Consistent with the foregoing, the § 3553(a) factors ultimately weigh in favor of granting Bravo-Ziranda a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A); *Rivas*, 833 F. App'x at 557; *see also United States v. Cantu*, 423 F. Supp. 3d 345, 354-55 (S.D.

Tex. 2019) (finding the defendant's offense was very serious, but the applicable § 3553(a) factors supported his request for compassionate release).

## IV.  CONCLUSION

For the foregoing reasons, The Court **GRANTS** Bravo-Ziranda's compassionate release motions (docs. 146, 157) and **ORDERS** that he be released to ICE custody pursuant to a detainer.  *See* (Doc. 157-1 at 7).

SO ORDERED.

Signed July 10th, 2023.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE